UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    CASE NO. 2:10-CR-20570
    JUDGE VICTORIA A. ROBERTS
    MAGISTRATE JUDGE PAUL KOMIVES

DAWAYNE BARCLAY,

    Defendant.
    _____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE (docket #14)**

I.    RECOMMENDATION: The Court should deny defendant's motion to suppress.

II.    REPORT:

A.    *Background*

The car in which defendant Dawayne Barclay was a passenger was stopped by two Detroit Police Officers on September 6, 2010. The officers claim that defendant was in possession of a handgun at that time. On September 17, 2010, the Government filed a criminal complaint charging defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The Grand Jury returned an indictment charging the same crime on September 23, 2010. The matter is currently before the Court on defendant's motion to suppress evidence, filed on November 15, 2010. Defendant contends that his seizure was without probable cause, and that the resulting search was therefore illegal. Defendant seeks suppression of any evidence obtained as a result of the search and of any statements he made to the officers. The Government filed a response on December 6, 2010. The Court referred the matter to me for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B). I held an evidentiary hearing on January 5, 2011, at which the government presented the testimony of Detroit Police Officers Erica Jackson and Shamar Woods, the officers who conducted the traffic stop.[1] Following the hearing, the parties filed supplemental briefs.

The facts relevant to the instant motion, as testified to by Jackson and Woods, are for the most part undisputed. On September 6, 2010, the officers were on patrol when they received a dispatch call at around 12:30 p.m. Dispatch requested that the officers stop a vehicle and identify the driver, who was a possible homicide suspect. The officers were traveling northbound on Hamilton, when they saw the subject van traveling southbound on Hamilton. The van turned left, heading westbound on Lawrence, crossing in front of the officers' car. *See id*. at 10. Officer Jackson testified that she was able to see into the vehicle, and that she saw defendant lowering a can of beer. When she approached the vehicle after the stop, defendant had a can of beer between his legs. Jackson testified that she was about a half of a block away when the van turned in front of her car. She testified that she could not say if defendant's hand obscured part of the can, nor could she describe with particularity any writing or symbols on the can. She believed the can to be a beer can because of its size. After the stop, Jackson poured out the beer and disposed of the can. She did not retain the can for evidence, even though she issued a citation to defendant for carrying an open intoxicant. Jackson testified that she never saves a can or bottle that she confiscates in connection with an open intoxicants citation, and that the Detroit Police Department does not have a policy requiring her to do so.

Officer Woods testified that she was about 20 feet away from the van when it turned in front

---

[1] Defendant initially called Kevin Moore as a witness, but decided that his testimony was unnecessary and excused him without asking any questions.

of her, and was able to see the passenger inside the van. She saw defendant's hand around a can, but did not remember where on the can his hand was placed. She testified that the can was gold and white and had writing on it, but she could not discern the writing. She did not see any beer manufacturer or brand name on the can.[2]

B.  *Legal Standard*

The Fourth Amendment provides, in relevant part, that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. Beginning with *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme "Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Sixth Judicial Dist. Ct. of Nev.*, 542 U.S. 177, 185 (2004). The Court "has consistently articulated a clear governing rule: when officers have reasonable suspicion that occupants of a vehicle are engaged in criminal activity, they may briefly stop the vehicle to investigate." *Gaddis ex rel. Gaddis v. Redford Township*, 364 F.3d 763, 768-69 (6th Cir. 2004) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *Alabama v. White*, 496 U.S. 325, 328-32 (1990); *United States v. Hensley*, 469 U.S. 221, 226 (1985)). In other words, "[p]olice may make an investigative stop of a vehicle when they have reasonable suspicion of an ongoing crime, whether it be a felony or misdemeanor." *Id.* at 771 n.6; *cf. Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 439 n.29 (1984)) ("'Most traffic stops,' this Court has observed, "resemble, in duration and atmosphere, the kind of brief

---

[2]In addition to the testimony of the officers, the government also introduced into evidence the officers' arrest reports, as Plaintiff's Exhibits 1 & 2. Defendant submitted a CD recording of the dispatch and police radio calls as Defendant's Exhibit 1.

detention authorized in *Terry*.'").[3]

For a *Terry* seizure or search to withstand a Fourth Amendment challenge, the search or seizure must be both "justified at its inception" and "reasonably related in scope to the circumstances which justified the stop." *Terry*, 392 U.S. at 20. As explained above, a search or seizure is "justified at its inception" if it "is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (in turn quoting *Terry*, 392 U.S. at 30)). As the Supreme Court has explained, "the concept of reasonable suspicion is somewhat abstract," and cannot be "reduce[d] [to] a neat set of legal rules." *Id*. at 274 (internal quotation omitted). The question is whether, looking at "the totality of the circumstances," the officer had "a 'particularized and objective basis' for suspecting legal wrongdoing." *Id*. at 273 (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). An officer may "draw on [her] own experience and specialized training to make inferences from and deductions about the cumulative information available to [her]," but "an officer's reliance on a mere 'hunch' is insufficient to justify a stop." *Id*. at 273-74. Nevertheless, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id*.

---

[3]Contrary to other circuits, the Sixth Circuit has established a two-tiered standard for traffic stops. As explained in *Gaddis*, an officer need only have a reasonable suspicion to make an investigatory stop where an ongoing crime, be it felony or misdemeanor, is involved. On the other hand, where only a civil infraction or a completed misdemeanor is involved, the probable cause standard governs the legality of the stop. *See United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008); *Gaddis*, 364 F.3d at 771 n.6. *But see*, *United States v. Moran*, 503 F.3d 1135, 1141-42 (10th Cir. 2007); *United States v. Grigg*, 498 F.3d 1070, 1081 (9th Cir. 2007). Here, the officers testified that they observed defendant with an open intoxicant in a motor vehicle, which constitutes an ongoing misdemeanor violation under Michigan law. *See* MICH. COMP. LAWS § 257.624a(1). Thus, the reasonable suspicion standard governs here. Notably, defendant's supplemental brief does not argue that the probable cause standard is applicable to the initial stop of the van.

at 274.

C.     *Analysis*

Before applying this standard to the stop at issue here, it is important to clarify what is *not* at issue, either because the parties do not argue the matter or because the arguments they do make are clearly meritless. First, there is no question with respect to whether the stop itself, once it had been effectuated, was "reasonably related in scope to the circumstances which justified the stop." *Terry*, 392 U.S. at 20. At the hearing, Officer Jackson testified that when she and her partner made the stop, she approached the passenger side of the vehicle and asked for defendant's identification. *See* Evid. Hr'g Tr., at 12. This action was consistent with the purpose of the stop, namely, to investigate and possibly cite defendant for having an open intoxicant in the car. Defendant responded by indicating to her that he was in possession of a gun. *See id.*; *see also*, *id.* at 49 (testimony of Officer Woods). To conduct a weapons pat down as part of a traffic stop, "the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Johnson*, 129 S. Ct. at 784. Defendant's voluntary statement to Officer Jackson provided such a suspicion. *See United States v. Farmer*, No. 2:07-cr-50-FtM-34SPC, 2008 WL 2397597, *14 (M.D. Fla. June 10, 2008) ("It is clear, that Ofcs. Knick and Langton had a reasonable suspicion the Defendant was armed because of his statement that he had a weapon in the vehicle."). Defendant offers no challenge to any of the officers' conduct after the stop, and thus the question here is only whether the stop was "justified at its inception." *Terry*, 392 U.S. at 20.

Second, several of the arguments made by defendant to challenge the stop or call into question the credibility of the officers are without merit. For example, defendant questions the credibility of the officers' testimony that he was stopped for possessing an open intoxicant, noting

that the real purpose of the stop was to investigate the driver as a possible homicide suspect as evidenced by the radio dispatches relating to the stop. That the officers may have been motivated to conduct the stop for this reason, however, does not call into question the validity of the stop or the credibility of the officers regarding their observations. The Supreme Court's "cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *Whren v. United States*, 517 U.S. 806, 812-813 (1996)). Thus, "'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Whren*, 517 U.S. at 813 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)). In other words, the fact that the stop was mere pretext because "the officer who executed the stop had an ulterior law enforcement motive . . . is constitutionally irrelevant." *United States v. Valdez*, 147 Fed. Appx. 591, 594 (6th Cir. 2005); *see also*, *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010); *United States v. Hughes*, 606 F.3d 311, 315-16 (6th Cir. 2010).

Similarly, defendant's claim that Officer Jackson was not credible because she testified that there was no police department policy requiring her to preserve the beer or beer can is without merit. Officer Jackson testified that it was not her practice to put a can of beer in evidence for an open intoxicants violation. *See* Evid. Hr'g Tr., at 33-35, 44-45. She also testified that the Detroit Police Department did not have such a policy. Even assuming that Officer Jackson was mistaken as to the existence of a departmental policy,[4] this does not call into question the credibility of her testimony

---

[4] In support of his claim, defendant has attached to his supplemental brief what are purported to be two portions of a Detroit Police Department manual. The first portion, at procedure 11.7, provides that an officer shall confiscate and place in evidence any alcohol leading to an open intoxicants citation. As the government correctly notes, however, this portion is undated. Further, contrary to the

or the validity of the search. As aptly observed by the Government, even if Officer Jackson was mistaken as to the actual existence of a policy, her testimony at the evidentiary hearing "demonstrates that she clearly believed that there was no policy, since she never saved alcohol containers in any of her prior open intoxicant cases and has never known another DPD officer to save them either." Gov't's Supp. Br., at 7. Thus, the actual existence of a policy to preserve open intoxicant evidence may call into question Officer Jackson's knowledge of departmental procedure, but it does not call into question her credibility regarding what she thought the policy to be and why she disposed of the beer and beer can. Moreover, whether Officer Jackson's actions violated departmental policy is irrelevant to the Fourth Amendment inquiry. *See Virginia v. Moore*, 553 U.S. 164, 172 (2008) ("We thought it obvious that the Fourth Amendment's meaning did not change with local law enforcement practices–even practices set by rule.").

Finally, both defendant and the Government argue whether defendant, in fact, was in possession of an open intoxicant at the time the officers pulled over the van. The Government argues that defendant's possession of an open intoxicant confirms that the officers had reasonable suspicion to stop the van, while defendant argues that he was not in fact in possession of an open intoxicant, and that the officers are not credible with respect to this point. Whether defendant in fact was in possession of an open intoxicant is irrelevant to whether the officers had reasonable suspicion to justify their stop of the van. "Hindsight may be twenty-twenty, but whether probable cause [or

---

second portion which is dated and appears computer generated, the first portion appears typewritten and is certainly different in appearance from the second portion of the manual submitted by defendant. It is thus not clear that the first portion provided by defendant is a Detroit Police procedure currently in effect. The second portion does not support defendant's argument regarding the police. That portion, at procedure 306.1-13, merely provides how liquor evidence is to be handled "[w]hen liquor is taken into possession as evidence." It does not set forth the circumstances in which liquor must or should in fact be taken into possession as evidence.

reasonable suspicion] existed at the time of the search may not be determined by what the search actually yields. It is a basic tenet of the Fourth Amendment that 'a search is not to be made legal by what it turns up.' Likewise, a search is not made illegal by what it fails to turn up. As the Supreme Court emphasized, 'In law [a search] is good or bad when it starts and does not change character from its success.'" *United States v. Outlaw*, 134 F. Supp. 2d 807, 815 (W.D. Tex. 2001) (quoting *United States v. Di Re*, 332 U.S. 581, 595 (1948).

The question therefore is, simply, whether Officers Jackson and Woods had a reasonable suspicion that defendant was in possession of an open intoxicant at the time they effectuated the stop of the van. The Court should conclude that they did have a reasonable suspicion. In making this recommendation, I find no basis on which to question the credibility of the officers with respect to their testimony that they saw defendant drinking from a can as the van crossed in front of their patrol car. Both officers testified that the van turned left across their direction of traffic, those exposing the passenger side of the van to their view. Further, the officers testified that the van was 20 feet to a half block away at the time it turned, in either case close enough for the occupant of a vehicle to see a passenger in the van drinking from a can. Neither defendant's cross-examination of the officers nor any of the evidence submitted by defendant calls into question the credibility of this testimony.

Similarly, I recommend that the Court find the officers' testimony credible to the extent they claim to have identified the can as a beer can. It is true that, on cross-examination, Officer Jackson testified that she did not recall where defendant's hand was on the can, and that she could not make out any lettering on the can. *See* Evid. Hr'g Tr., at 30, 32-33. She also testified, however, that "[i]t looked to me to be beer," *id*. at 32, particularly based on the size (32 ounces) of the can. Similarly,

8

Officer Woods testified that she did not know where on the can defendant's hand was placed, and she was unable to make out any of the writing on the can. However, she also testified that she observed that the can was gold and white with black writing on it. *See id*. at 61-62. She testified that her conclusion was based on her "experience and the color of the can," because she is familiar enough with beer "to know that a gold and white can is beer." *Id*. at 65.

Defendant argues, essentially, that because the officers saw only the general size and coloring of the can, and because they were unable to testify as to whether any non-alcoholic beverages share those characteristics, they could not have known that he was drinking a beer. However, the question is not whether the officers knew that defendant had an open intoxicant in the car, but whether they had a reasonable suspicion that he had an open intoxicant. *See Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) ("[W]hat is generally demanded of the many factual determinations that must regularly be made by agents of the government . . . is not that they always be correct, but that they always be reasonable."). And it is irrelevant that other, non-alcoholic beverages may also be sold in similarly designed cans. *See United States v. Kaplansky*, 42 F.3d 320, 327 (6th Cir.1994) ("[P]olice need not rule out every innocent explanation for suspicious behavior in order to justify an investigatory stop."). Here, the officers testified based on their experience that the size and coloring of the can led them to believe that the can they observed was a can containing beer. This was sufficient to provide the officers an objectively reasonable suspicion that defendant was in possession of an open intoxicant in violation of state law. *See United States v. Grote*, No. CR-08-6057, 2009 WL 2068023, at *2 (E.D. Wash. July 15, 2009) (officer had reasonable suspicion to believe that bottle in brown paper bag contained alcohol based on officer's knowledge that liquor stores typically put bottles of alcohol in such bags); *States v. Benioh*, No. 27, 290, 2009 WL

6567167, at *5 (N.M. Ct. App. June 30, 2009) (officer's belief that bottles purchased by defendant were alcohol reasonable based on officer's testimony that he "knew that alcohol is often contained in forty-ounce bottles of a color similar to the bottles carried by Defendant."); *People v. Bothwell*, 690 N.Y.S.2d 231, 234 (1999) (officer had reasonable suspicion to stop defendant for drinking in public based on officer's testimony that bottle resembled a beer bottle); *cf. United States v. Pullen*, 884 F. Supp. 410, 412 (D. Kan. 1995) (officer's testimony that bottle was a large 32-40 ounce bottle supported reasonable suspicion that bottle contained beer), *aff'd*, 82 F.3d 427 (10th Cir. 1996). Accordingly, the Court should conclude that the officers' stop of the van was proper under *Terry*, and should deny defendant's motion to suppress.[5]

---

[5] Relying on *Herring v. United States*, 129 S. Ct. 695 (2009), and *United States v. Master*, 614 F.3d 236 (6th Cir. 2010), the Government argues that even if there was a Fourth Amendment violation in this case suppression is not an appropriate remedy. If the Court accepts my recommendation, the Court need not reach this issue. However, if the Court concludes that the officers did not have reasonable suspicion to stop the van, the Court should reject the government's argument and conclude that suppression is the appropriate remedy. In *Herring*, the Court considered whether the exclusionary rule applies where an "officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee." *Herring*, 129 S. Ct. at 698. Analogizing to its decisions in *United States v. Leon*, 468 U.S. 897, 922 (1984) (exclusionary rule inapplicable where police rely in objectively reasonable reliance on a warrant issued by a neutral magistrate) and *Arizona v. Evans*, 514 U.S. 1, 14-15 (1995) (exclusionary rule inapplicable where police acted in reasonably reliance on a court database which mistakenly indicated that a warrant was outstanding), the *Herring* Court concluded that any deterrent effect of applying the exclusionary rule in that case was outweighed by its costs to society. *Herring*, 129 S. Ct. at 700-04. In *Master*, which also involved a defective warrant, the Sixth Circuit read *Herring* as "effectively creat[ing] a balancing test by requiring that in order for a court to suppress evidence following the finding of a Fourth Amendment violation, 'the benefits of deterrence must outweigh the costs.'" *Master*, 614 F.3d at 243 (*Herring*, 129 S. Ct. at 700). In the Sixth Circuit's view, "the *Herring* Court's emphasis seems weighed more toward preserving evidence for use in obtaining convictions, even if illegally seized, than toward excluding evidence in order to deter police misconduct unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Id.* (quoting *Herring*, 129 S. Ct. at 702).

Based on *Master* the Government argues that evidence should never be excluded "unless the officers engage in 'deliberate, reckless, or grossly negligent conduct.'" *Id.* (quoting *Herring*, 129 S. Ct. at 702). Because the officers' conduct here was not deliberate, reckless, or grossly negligent, the Government argues, the evidence obtained as a result of the stop should not be suppressed. The Government's argument, however stretches *Herring* and *Master* far beyond the bounds of those cases.

Both *Herring* and *Master* involved what appeared to be facially valid warrants which, it later turned out, were defective and the officers' reasonable reliance on those warrants. Those cases, in other words, were merely applications of the *Leon* good faith exception to the exclusionary rule. The *Leon* rule has been applied in four circumstances, when officers: (1) reasonably and in good faith rely on a warrant subsequently declared invalid, *see Leon*, 468 U.S. at 922; (2) perform a warrantless search in reliance upon a statute later declared unconstitutional, *see Illinois v. Krull*, 480 U.S. 340, 349-53 (1987); (3) act in good faith reliance upon mistaken information indicating the existence of an outstanding warrant, *see Herring*, 129 S. Ct. at 702-04; *Evans*, 514 U.S. at 14-16; and (4) act in reliance on existing caselaw which justifies the search but which is later overturned, *see United States v. Buford*, 632 F.3d 264, 276 (6th Cir. 2011); *United States v. McCane*, 573 F.3d 1037, 1044-45 (10th Cir. 2009). *See generally*, *McCane*, 573 F.3d at 1042-44; *United States v. Peoples*, 668 F. Supp. 2d 1042, 1048 (W.D. Mich. 2009).

On the other hand, the courts have concluded that the good faith exception is generally inapplicable to warrantless searches besides those types of warrantless seraches identified in *Krull* and *Evans. See United States v. Herrera*, 444 F.3d 1238, 1251 (10th Cir. 2006); *United States v. Curzi*, 867 F.2d 36, 44 (1st Cir. 1989); *United States v. Winsor*, 846 F.2d 1569, 1579 (9th Cir. 1988) (en banc); *United States v. Morgan*, 743 F.2d 1158, 1165 (6th Cir. 1984). And I have been unable to locate a single case, either federal or state, applying the good faith exception to an officer's own mistaken conclusion that the facts known to the officer sufficed to establish reasonable suspicion or probable cause. *Cf. United States v. Lopez-Soto*, 205 F.3d 1101, (9th Cir. 2000) ("[T]here is no good faith exception to the exclusionary rule for police who do not act in accordance with governing law. To create an exception here would defeat the purpose of the exclusionary rule, for it would remove the incentive for police to make certain that they properly understand the law that they are entrusted to enforce and obey."). Indeed, such a conclusion would be nonsensical. Under *Terry*, the question is whether the officer had an objectively reasonable suspicion that a crime was occurring or was about to occur. Under *Leon*, the question is whether an objectively reasonable officer would have known that the search or seizure was illegal. However, no objectively reasonable officer could believe a search to be valid where there is no objectively reasonable suspicion. Thus, *Leon* simply takes one back to the *Terry* inquiry–that is, whether there was objectively reasonable suspicion. And nothing in *Herring* or *Master*, both of which involved traditional *Leon*-type circumstances, purports to change this understanding of *Leon*.

Instructive is the decision in *United States v. Stokely*, 733 F. Supp. 2d 868 (E.D. Tenn. 2010). In that case, the court found that the officer's original decision to detain the defendant, which subsequently led to the defendant's consent to search his home, was not supported by reasonable suspicion. There, as here, the Government nevertheless argued that exclusion was improper under *Herring* because the officer "detained Mr. Stokely based upon a good-faith belief in the existence of reasonable suspicion to detain him[.]" *Id.* at 905. The court rejected this argument for similar reasons to those discussed above, explaining:

> In the present case, Detective Gibson's decision to detain Mr. Stokely and to place him in handcuffs was based upon her own erroneous assessment that either she or the officers directing her to detain Mr. Stokely had a valid basis to do so. As discussed at length above, that determination was woefully incorrect. Unlike the officers in *Herring* who relied upon the representation of other law enforcement personnel that an arrest warrant was outstanding or the officers executing the search warrant in *Leon* who relied upon the judge's determination that probable cause to issue a search warrant existed, Detective Gibson made the decision to detain Mr. Stokely at the scene based

11

D.    *Conclusion*

In view of the foregoing, the Court should conclude that the officers' stop of the van in which defendant was a passenger was based on reasonable suspicion, and thus that the stop did not violate defendant's Fourth Amendment right to be free from unreasonable search and seizure. Accordingly, the Court should deny defendant's motion to suppress.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931

---

upon her and her fellow officers' assessment that such detention was necessary and legal. Thus, the Fourth Amendment violation in this case resulted from the deliberate action of law enforcement and is of a type that could be deterred by exclusion of the evidence.

*Id.* at 906. And, in other contexts, the courts (including the Sixth Circuit) have rejected the Government's arguments that *Herring* fundamentally alters the way in which courts are to apply the exclusionary rule or the good faith exception. *See United States v. Lazar*, 604 F.3d 230, 237-38 & n.6 (6th Cir. 2010) (with respect to facially deficient warrant, which is generally outside the good faith exception, rejecting the Government's argument that *Herring* "greatly expanded" the good faith exception and "changed the applicable standard," and concluding that "*Herring* does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*."); *United States v. Martinez*, 686 F. Supp. 2d 1161, 1204-05 (D.N.M. 2009) (with respect to rule that good faith exception does not apply to warrants supported by illegally obtained evidence, "[t]he Court does not believe that the Supreme Court's decision in *Herring v. United States* changes this analysis. . . . The Court is not convinced that *Herring v. United States* stands for the proposition that, *any time* an officer in the field negligently violates someone's constitutional rights, exclusion of the evidence is not justified."). Accordingly, if the Court concludes that the officers lacked reasonable suspicion to stop the van, the Court should conclude that the evidence is subject to suppression notwithstanding *Herring* and *Master*.

F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                s/Paul J. Komives
                PAUL J. KOMIVES
                UNITED STATES MAGISTRATE JUDGE

Dated: March 21, 2011

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 21, 2011.

                s/Susan Jefferson
                Deputy Clerk